UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANTONIO LOPEZ GUTIERREZ and JESUS VASQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIANCE FSS LLC, ECLIPSE BUSINESS GROUP, INC., PHONG JOHN NGUYEN, and DOES 1–100,<br><br>Defendants. | Case No.: EDCV 19-00990-CJC(JEMx)<br><br>ORDER GRANTING IN SUBSTANTIAL PART UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 27] |

## I. INTRODUCTION & BACKGROUND

Plaintiffs Antonio Lopez Gutierrez and Jesus Vasquez bring this putative class action against Defendants Alliance FSS LLC, Eclipse Business Group, Inc., Phong John Nguyen, and unnamed Does on behalf of themselves and all current and former hourly

employees that worked for Defendants as painters, cleaners, and/or maintenance workers. (Dkt. 21 [Second Amended Complaint, hereinafter "SAC"].) Plaintiffs assert that Defendants violated various provisions of the California Labor Code based on their overtime, meal period, and compensation policies. Specifically, they assert claims for (1) failure to pay overtime wages, (2) failure to provide required meal periods, (3) failure to provide required rest periods, (4) failure to pay earned wages after separation, (5) failure to provide accurate wage statements, and (6) unfair business practices. (*Id.*) They also assert a seventh claim for violations of the federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.* This action was originally filed in San Bernardino County Superior Court in November 2018, and then, after an amended pleading, removed by Defendants to this Court in May 2019. (*See* Dkt. 1 [Notice of Removal].) The operative Second Amended Complaint ("SAC") was filed in this Court in December 2019 and the parties proceeded to discovery and settlement negotiations.

Specifically, class counsel contacted and met with putative class members, inspected and analyzed over 4,000 pages of payroll records, answered and propounded interrogatories, defended the deposition of one of the named Plaintiffs, and met and conferred with Defense Counsel. (*See* Dkt. 27-2 [Declaration of Stephen Glick, hereinafter "Glick Decl."] ¶¶ 3–7.) The parties then proceeded to a full-day mediation session before the Honorable Charles W. McCoy, Jr. (Ret.) on February 11, 2020. (*Id.* ¶ 3.) Mediation was successful and the parties entered into a settlement agreement to resolve all claims in this action. (*Id.* ¶ 7; *Id.* Ex. 1 [Joint Stipulation and Class Action Settlement Agreement and Release of Claims, hereinafter "Settlement Agreement"].) The Settlement Agreement creates a Gross Settlement Fund of $142,500, with up to 33% of that amount going to the attorneys and 66% to the class, with Defendant separately paying the employer-side payroll taxes that result from the payments to class members. (Settlement Agreement.) Before the Court is Plaintiffs' unopposed motion for preliminary approval of the Settlement Agreement. (Dkt. 27 [Notice and Motion]; Dkt.

27-1 [Memorandum in Support, hereinafter "Mot."].) For the following reasons, the motion is **GRANTED IN SUBSTANTIAL PART**.[1]

**II. ANALYSIS**

To determine whether preliminary approval of the Settlement Agreement is appropriate, the Court reviews (1) the requirements for class certification, (2) the fairness of the proposed settlement, (3) the attorney fees and incentive awards requested, (4) the request for appointment of a settlement administrator, and (5) issues relating to notice of the proposed settlement.

    **A.    Class Certification Requirements**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek provisional certification of a class for settlement purposes only. The proposed settlement class is defined to include "any and all persons who worked for Defendants as painters, cleaners, and maintenance workers whose paystubs state that they were paid on an hourly basis in California at any time between November 9, 2014 to the date of preliminary approval (the Class Period)." (Settlement Agreement § 1.4.)

When a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for August 24, 2020, at 1:30 p.m. is hereby vacated and off calendar.

there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests. Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes. Here, Plaintiffs seek certification pursuant to Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. Rule 23(a) Requirements

Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests.

### a. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473–74 (C.D. Cal. 2012). Here, numerosity is satisfied because Defendant's employment and payroll records show there are approximately 148 individuals in the proposed settlement class. (Glick Decl. ¶ 4.)

### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the claims must depend on a "common contention" that is capable of classwide resolution. *Id.* This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiffs claim that Defendants maintained a common policy and practice of denying employees rest periods and meal period, underpaying overtime hours, failing to timely pay wages on separation, and failing to provide accurate itemized wage statements. (*See* FAC.) Resolution of the class's claims therefore presents common questions, including (1) whether Defendants had and enforced a uniform rest and meal period policy, (2) whether that policy violated California law, (3) whether Defendants had and enforced a uniform overtime wage policy, and (4) whether that policy violated California law. (*See id.* ¶ 16.) Those questions are central to each class member's claims and their resolution will help determine, "in one stroke," whether Defendants violated the law.

### c. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, as an hourly employees, Plaintiffs were subject to the same policies as the rest of the class. Their injuries and claims are the same as those of the class members. Accordingly, Plaintiffs' claims are "reasonably coextensive" with those of the class. *See id.*

### d. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiff, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957. The concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel, and class representatives to pursue their own interests at the expense of the interests of the class. *Id.* at 958 n.12.

There is no evidence of a conflict of interest between the named Plaintiffs and the class. Plaintiffs' claims are identical to those of the class, and they have every incentive to vigorously pursue those claims. (*See* Glick Decl. ¶¶ 15–16.) Nor is there any evidence that Plaintiffs' counsel will not adequately represent or protect the interests of the class. Plaintiffs' counsel, Michael Anthony Jenkins and Stephen Glick of the Law Offices of Stephen Glick, have extensive experience litigating wage-and-hour class actions. (*See id.* ¶¶ 8–14.) Counsel have prosecuted this matter effectively, leading to the present Settlement Agreement. The record indicates that they have done so capably and adequately. For example, they propounded and answered interrogatories and analyzed over 4,000 pages of payroll records and data in order to estimate Defendants' exposure. (*See id.* ¶ 5.)

### 2. Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Plaintiffs must satisfy the requirements of Rule 23(b)(3). Under Rule 23(b)(3), a plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members." Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry. *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Plaintiffs have shown that questions common to the class predominate over any questions affecting only individual members. The central questions in this case are whether Defendant's rest break, meal break, and overtime policies were lawful. These questions can be resolved using common evidence regarding Defendants' policies for all class members.

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court finds that proceeding as a class is superior to other methods of resolving the issues in this case. A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class action may also be superior when "no realistic alternative" to a class action exists. *Id.* at 1234–35. Here, adjudicating the class claims on an individual basis for nearly 150 employees would be inefficient. Additionally, although the Court foresees no management problems from resolving this dispute as a class action, the Supreme Court has held that a district court "need not inquire whether the case, if tried, would present intractable management problems" in a "settlement-only class certification." *Amchem*, 521 U.S. at 620. Accordingly, Plaintiffs' proposed class is appropriate for provisional certification under Rules 23(a) and 23(b)(3).

### B. Fairness of the Proposed Settlement

Plaintiffs seek preliminary approval of the Settlement Agreement. Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate." *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026). To determine whether this standard is met, courts consider factors including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)). At the preliminary approval stage, a full "fairness hearing" is not required. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*

### 1. Class Member Compensation

Having reviewed the arms-length negotiation process and substantive terms of the Settlement Agreement, the Court finds no obvious deficiencies or grounds to doubt its fairness. *See id.* Each class member will likely receive a meaningful sum—approximately $600 on average, weighted based on the number of weeks worked during the Class Period. (Mot. at 4.) Moreover, there is no evidence of collusion during the parties' settlement negotiations. Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The Settlement Agreement also presents a fair compromise in light of the risks and expense of continued litigation. After significant discovery and mediation, litigation reached a stage where the parties had a clear view of the strengths and weaknesses of their positions. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." (internal quotation and citations omitted)). With that information, they were able to realistically value Defendants' liability and assess the risk of moving forward with class certification, motions for summary judgment, and trial. (*See* Glick Decl. ¶¶ 3–7.) For example, Plaintiffs' counsel anticipated significant hurdles, including a federal enclave defense based on the class members' employment at the Fort Irwin military base, which could have limited the availability of FLSA damages. (*Id.*; *see* Mot. at 8.) Accordingly, it appears that the Settlement Agreement reflects a fair result.

### 2. Attorney Fees

The Settlement Agreement also provides for up to $47,025 in attorneys' fees, up to $5,000 in costs, and up to $9,500 in claims administration costs. (Settlement Agreement §§ 2.1.4, 2.1.6.) Counsel will apply for fees and costs before the final settlement approval. (*Id.*) Counsel's requested fees are 33% of the $142,500 common fund. After taking out the prospective litigation and claims administration costs, the fees are approximately 37% of the recovery.

The Ninth Circuit has held that 25% of the settlement fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)). The Court has no reason to believe that there are any special or unusual circumstances that apply in this case, and Plaintiff has cited none. (*See* Mot. at 8–9.) The instant motion fails to mention the Ninth Circuit's benchmark rule. (*See id.*) Somewhat misleadingly, counsel cites to district court decisions awarding similar fees based on "unusual circumstances," but does not argue that any similar circumstances are present here. *See, e.g.*, *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *15 (C.D. Cal. July 21, 2008) (concluding, after careful scrutiny, that special circumstances justified a departure from the 25% benchmark). This is not a complex case, and there was no motion practice or other substantial litigation. Accordingly, at this time the Court preliminarily approves only $35,625 in attorney fees, or 25% of the settlement fund. The

Court will expect detailed evidence and declarations supporting the requested fee award at the final approval stage.

### 3. Incentive Award

Plaintiffs also seek a $5,000 incentive award to compensate the class representatives for their time and efforts on behalf of the class. Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Such awards "are fairly typical in class action cases" and are discretionary. *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed). In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable." *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015). Here, the Court sees no reason why Plaintiffs should not each receive the presumptively reasonable award of $5,000. Accordingly, the Court preliminarily approves Plaintiffs' request for incentive awards.

### C. Settlement Administrator

Plaintiffs ask the Court to appoint ILYM Group, Inc. ("ILYM Group") as settlement administrator. The parties have jointly agreed to use ILYM Group as the settlement administrator. (Mot. at 6.) ILYM Group appears to have significant experience acting as a settlement administrator, and federal courts in California routinely approve ILYM Group as a class action settlement administrator. *See*, *e.g.*, *Roberts v. Marshalls of CA, LLC*, 2018 WL 510286, at *5 (N.D. Cal. Jan. 23, 2018); *Ruch v. AM Retail Grp., Inc.*, 2016 WL 5462451, at *2 (N.D. Cal. Sept. 28, 2016). Accordingly, the Court appoints ILYM Group as Settlement Administrator. Any award of administrator expenses will need to be substantiated with detailed evidence.

**D.     Notice of the Proposed Settlement**

Finally, Plaintiffs seek approval of the proposed manner and form of the notice that will be sent to the class members. For Rule 23(b)(3) classes, courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Court finds the proposed manner of notice is adequate. Plaintiffs propose a notice protocol centering on direct mail. Following preliminary approval, Defendants will provide ILYM Group a list of class members. (Settlement Agreement §§ 3.2.1–3.2.2.) ILYM Group will mail a notice to each class member, and also perform skip traces on any notices returned as undeliverable. (*Id*. § 3.2.4.) The class notice describes the terms of the settlement, explains the rights of class members, and will be accompanied by a notice of settlement award detailing the prospective recovery of that class member based on their qualifying workweeks. (*Id.*; *see* Glick Decl. Ex. 3 [Proposed Notice].)

The form of notice also meets the requirements of Rule 23(c)(2)(B). Notice to class members must "clearly and concisely state, in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed notice provides clear information about the definition of the class, the nature of the action, a summary of the terms of the proposed settlement, the process for objecting to the settlement, and the consequences of inaction.

(*See* Glick Decl. Ex. 3.)  It also will be accompanied by a notice detailing the individual employee's estimated settlement payment.  (*Id.*)  The notice will also provide specific details regarding the date, time, and place of the final approval hearing and inform class members that they may enter an appearance.  (*See id.*)

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** provisional certification of the class for settlement purposes and **GRANTS IN SUBSTANTIAL PART** preliminary approval of the Settlement Agreement.  The Court **APPOINTS** Plaintiffs Antonio Lopez Gutierrez and Jesus Vasquez as Class Representatives.  The Court also **APPOINTS** Stephen Glick and M. Anthony Jenkins of the Law Offices of Stephen Glick, as Class Counsel, and ILYM Group, Inc. as Settlement Administrator.  The Court also **APPROVES** the proposed notice and orders that it be disseminated to the class as provided in the Settlement Agreement.  The final approval hearing shall be held on **Monday, November 30, 2020, at 1:30 p.m**.  The parties and ILYM Group shall adhere to the proposed interim deadlines based on this hearing date, as set out in Plaintiffs' briefing.

DATED:   August 18, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE