FILED
CLERK, U.S. DISTRICT COURT
11/30/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: CW   DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANTONIO LOPEZ GUTIERREZ and JESUS VASQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIANCE FSS LLC, ECLIPSE BUSINESS GROUP, INC., PHONG JOHN NGUYEN, and DOES 1–100,<br><br>Defendants. | Case No.: EDCV 19-00990-CJC(JEMx)<br><br>ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 32] |

## I. INTRODUCTION & BACKGROUND

Plaintiffs Antonio Lopez Gutierrez and Jesus Vasquez bring this putative class action against Defendants Alliance FSS LLC, Eclipse Business Group, Inc., and Phong John Nguyen on behalf of themselves and all current and former hourly employees that worked for Defendants as painters, cleaners, or maintenance workers. (Dkt. 21 [Second

Amended Complaint].) Plaintiffs assert that Defendants' overtime, meal period, and compensation policies violated the California Labor Code and the federal Fair Labor Standards Act ("FLSA"). They assert claims for (1) failure to pay overtime wages, (2) failure to provide required meal periods, (3) failure to provide required rest periods, (4) failure to pay earned wages after separation, (5) failure to provide accurate wage statements, (6) unfair business practices, and (7) violation of the FLSA. (*Id.*)

After significant discovery, the parties participated in a full-day mediation session before the Honorable Charles W. McCoy, Jr. (Ret.) on February 11, 2020. (Dkt. 32 [Motion, hereinafter "Mot"] at 3.) The mediation resulted in a settlement agreement that resolves all claims in this action. (Mot. at 2; Dkt. 27-2. Ex. 1 [Joint Stipulation and Class Action Settlement Agreement and Release of Claims, hereinafter "Settlement Agreement"].) The Settlement Agreement creates a common settlement fund of $142,500, with up to 33% of that amount going to the attorneys and 66% to the class.

The Court granted preliminary approval of the settlement earlier this year, approving all of the terms except preliminarily approving only 25% of the common fund going to the attorneys. (Dkt. 29.) Now before the Court is Plaintiffs' unopposed motion for final settlement approval, in which Plaintiffs' counsel again seek 33% of the common settlement fund in fees. For the following reasons, Plaintiffs' motion is **GRANTED IN SUBSTANTIAL PART**.

**III. DISCUSSION**

In assessing whether to grant final approval, the Court analyzes (1) the propriety of granting class certification for purposes of settlement, (2) the fairness of the settlement, and (3) the reasonableness of the fees, costs, and incentive award requested.

### A. Class Certification

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy, and (2) the requirement that the action fall within one of the three "types" of classes described in Rule 23(b)'s subsections. In this case, Plaintiffs seek certification under Rule 23(b)(3), which allows certification if a court "finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court previously concluded that Plaintiffs presented sufficient evidence to show that the proposed class satisfies the Rule 23(a) and (b)(3) requirements. (*See* Dkt. 29 at 3–8.) Having reviewed those requirements again, the Court adopts its prior analysis regarding class certification and grants certification of the proposed class for settlement purposes only.

### B. Fairness of the Settlement

The Court next evaluates the fairness of the settlement. Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e). This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (alterations and quotations omitted).

Courts must therefore "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citation and quotation marks omitted). In considering whether this standard is met, courts consider various factors, including (1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, and (7) the reaction of the class members to the proposed settlement. *Id.*

### 1. Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The strength of Plaintiffs' case, when balanced against the risks and obstacles of continued litigation, weighs in favor of granting final approval of the settlement. If Plaintiffs were to succeed in certifying a class and then prevail on the merits, they might recover damages substantially higher than those reflected in the Settlement Agreement. However, Plaintiffs acknowledge that their path to recovery was not without significant risk. (Mot. at 4.) Most significantly, since the class worked on a military base, there was a risk that federal enclave preemption could apply, "which would limit this action to an FLSA case which would severely reduce the potential recovery." (*Id.*) More generally, of course, continued litigation would have involved considerable obstacles, costs, and unpredictability. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) (discussing how a class action settlement offered an "immediate and certain award" in light of significant obstacles posed through continued litigation); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."). This factor weighs in favor of approving the settlement.

### 2. Amount Offered in Settlement

The Court also finds that the amount offered is fair and reasonable, especially in light of the preceding discussion regarding the risks, obstacles, and costs of further litigation. Defendants will pay $142,500, and class members will receive an average payment of over $500, with the highest payment reaching over $2,700. (Mot. at 4; Dkt. 32-4 [Declaration of Makenna Snow of ILYM Group, Inc., hereinafter "Snow Decl."] ¶ 16.) These figures are substantial. Moreover, the amount offered in settlement provides an immediate and tangible benefit to the class and eliminates the risk that they could receive less than that amount, or nothing at all, if the litigation continued. The involvement of an experienced mediator following significant discovery, while not conclusive, also is a helpful barometer for the Court because it indicates that the settlement agreement was non-collusive. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). In the Court's view, the amount offered in settlement is reasonable. This factor also weighs in favor of approving the settlement.

### 3. Extent of Discovery Completed, Stage of Proceedings, and Experience and Views of Counsel

Additionally, the parties gathered enough information through substantial discovery and litigation to make an informed decision about whether the terms of the Settlement Agreement were fair. (Mot. at 5.) When the "parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approving the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal citation and quotation marks omitted). Indeed, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 889 (C.D. Cal. 2016).

At the time they reached the settlement, the parties had the benefit of over 4,000 pages of document discovery, including Defendant's time and payroll records and other class data for analyzing damages, and one of the Plaintiffs' depositions. (Dkt. 29 at 2; Mot. at 5.) Plaintiffs' counsel are experienced class-action litigators, and the parties participated in a full-day mediation session. (*See* Mot. at 5.) These facts make the Court confident that the parties were able to realistically value Defendant's liability and assess the risks of continuing to litigate. In short, the Court is satisfied that the parties reached the Settlement Agreement after developing a full and fair understanding of the merits and risks of the case, and negotiating at arm's length. This factor weighs in favor of approving the settlement.

### 4. Reaction of Class Members

Following the Court's preliminary approval, ILYM Group, Inc. ("ILYM") mailed notice to all 163 class members. (Snow Decl. ¶¶ 6–12.) The deadline for class members to opt out or object was November 16, 2020. (*Id.* ¶¶ 13–14.) Only 5 people chose to opt out of the settlement, and none objected. (Dkt. 34 [Supplemental Declaration of Makenna Snow] ¶¶ 6–7.) Class members' reaction to the settlement has therefore been very positive, and this factor favors final approval. *See Mego Fin. Corp.*, 213 F.3d at 459 (concluding that this factor supported final approval where "[o]nly one of the 5,400 potential class members to whom notice of the proposed Settlement and Plan of Distribution was sent chose to opt-out of the class"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

After considering the *Staton* factors, the Court finds the Settlement Agreement fair, adequate, and reasonable.

### 5. Rule 23(e)(2) Factors

The Court must also find the settlement "fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). There is substantial overlap between these factors and the *Staton* factors, so the Court does not repeat itself here. The Court has considered these factors and finds that the settlement is fair, reasonable, and adequate.

### C. Attorney Fees and Costs, and Plaintiffs' Incentive Award

Plaintiffs' counsel also seek final approval of their requests for $47,025 in attorney fees, $1,977.55 in costs, $9,019.90 for ILYM's costs, and a $5,000 incentive payment to each of the two class representatives. (Mot. at 5.)

#### 1. Attorney Fees and Costs

The Settlement Agreement allows Plaintiffs' counsel to seek up to $47,025 in fees—a full 33% of the common fund. (Agr. § 2.1.4.) At preliminary approval, the Court approved only $35,625 in attorney fees, or 25% of the settlement fund. (Dkt. 29 at 10–11.) Nevertheless, Plaintiffs' counsel seeks the full $47,025 here.

District courts have a duty to determine the fairness of attorney fees in a class action settlement. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999). The Settlement Agreement provides that counsel's fees will be paid from the common settlement fund. (*See* Agr. §§ 1.13, 1.19.) When a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to calculate attorney fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011). Whichever method a district court chooses, it is "encouraged . . . to guard against an unreasonable result by cross-checking [its] calculations against a second method." The amount of fees awarded rests ultimately in the court's sound discretion. *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986), *superseded by statute on other grounds*.

The Court begins with the percentage-of-recovery method. The Ninth Circuit has held that 25% of the fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark. *In re Bluetooth*, 654 F.3d at 942–43; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)).

Plaintiffs' counsel argues that an upward adjustment of the 25% benchmark award to a 33% award is appropriate in this case because they achieved an excellent result for the class, expended tremendous effort, have high skill and experience, assumed high risk of non-payment, the class reacted favorably to the settlement, and comparison with the lodestar supports that award. (Mot. at 6–7.) The Court is not persuaded. This was a straightforward wage-and-hour case without substantial litigation or other exceptional circumstances. Counsel performed ably, but not exceptionally. The settlement reflects a

result for Plaintiffs that is very good, but not extraordinary. The Court therefore finds that a 25% award is fair and reasonable in light of the results achieved, counsel's efforts in litigating this action, and the risks counsel took in accepting this case. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897–98 (9th Cir. 2017) (affirming 25% benchmark fee award where "[t]here were no special circumstances here indicating that the 25% benchmark award was either too small or too large"); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *5 (C.D. Cal. Oct. 24, 2017) (awarding 25% of settlement fund).

The "lodestar cross-check" does not persuade the Court that a 25% award is inadequate. Courts commonly perform a lodestar cross-check to assess the reasonableness of the percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyer's investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *see also In re Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the lodestar amount and a reasonable percentage award").

Plaintiffs' counsel contend that their lodestar fee is $51,965.50 because they spent 95.14 hours at reasonable hourly rates of $800 and $450. (Dkt. 32-1 [Declaration of Stephen Glick].) The Court has reviewed the billing records and concludes that the lodestar amount would overcompensate the attorneys in this case, given the good (but not great) result and the able (but not extraordinary) representation of counsel. *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (explaining that comparing the lodestar fee to the 25% benchmark "resembles what lawyers commonly do when they draft a bill based on hours spent, consider the bottom line as compared with the value of the result, then cut the bill if the total seems excessive as compared with the results obtained"). Granting Plaintiffs' counsel's fee application in full would "reduce substantially the size of the common fund

available for distribution to the plaintiff class" and is not appropriate under the circumstances in this case. *See id.*[1]

Additionally, the Court will calculate the 25% attorney fee award *after* deductions for counsel's and ILYM's costs. Calculating a percentage fee and then deducting expenses, as counsel urges, has the unusual effect of reimbursing counsel for their expenses—like transportation, hotels, deposition costs, and photocopying—and then awarding them 25% of their expenses as a fee. There is no principled reason to calculate a fee this way. *See Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *5 (C.D. Cal. July 11, 2016) (calculating attorneys' fee from net settlement award after deducting costs and administrative expenses); *Kanawi v. Bechtel Corp.*, 2011 WL 782244, at *1 (N.D. Cal. Mar. 1, 2011) (similar); *In re Apple iPhone/iPad Warranty Litig.*, 40 F. Supp. 3d 1176, 1182 (N.D. Cal. 2014) (similar).

The Court finds counsel's request for $1,977.55 in litigation costs and $9,019.90 in ILYM's costs reasonable and well-supported by the evidence presented in their motion. Deducting these costs from the $142,500 settlement amount, and taking 25% of that amount, the Court awards Plaintiffs' counsel $32,875.64 in attorney fees.

### 2. Plaintiffs' Incentive Awards

Plaintiffs each seek a $5,000 incentive award to compensate them for the time and effort they spent as class representative. Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Courts routinely approve this type

---

[1] According to the settlement administrator, if the Court approves attorney fees of 33% of the fund, the average class member will receive about $450. If the Court approves fees of 25%, the average class member will receive about $525. (Dkt. 34 ¶ 8.) This difference is substantial.

of award to compensate representative plaintiffs for the services they provide and the risks they incur during class action litigation. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 499 (E.D. Cal. 2010). In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable." *See Bellinghausen*, 306 F.R.D. at 266. When evaluating the reasonableness of an incentive award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and the time the plaintiff spent pursing the litigation. *Staton*, 327 F.3d at 977.

Plaintiffs state that they spent "considerable time and effort" on their duties as class representatives. They spent time searching for old schedules and time records, meeting with counsel multiple times, reviewing documents in the case, preparing for their depositions (and in Mr. Gutierrez's case, sitting for his deposition), and making themselves available during the mediation. (Dkts. 32-2, 32-3.) The Court finds that the requested $5,000 awards are reasonable in light of the time and effort Plaintiffs spent over the course of this case and the actions they took to protect the interests of the class.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for final approval of the Settlement Agreement is **GRANTED IN SUBSTANTIAL PART**. Plaintiffs' counsel are awarded $32,875.64 in attorney fees and $1,977.55 in costs, ILYM is awarded $9,019.90 in costs, and Plaintiffs are awarded $5,000 each for their service as class representatives.

DATED: November 30, 2020

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE